IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHN E. EASTER  #1759669, | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | No. 3:21-CV-0860-D (BH) |
| | ) | |
| CITY OF DALLAS PROBATE | ) | |
| DIVISION, et al., | ) | |
| **Defendants.** | ) | Referred to U.S. Magistrate Judge[1] |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Based on the relevant filings and applicable law, the plaintiff's complaint should be **DISMISSED**.

## I. BACKGROUND

John E. Easter (Plaintiff), a *pro se* Texas prisoner proceeding *in forma pauperis*, sues a former state-court probate judge (Judge) and his half-sister (Sister)[2] based on the award of his aunt's (Aunt) estate to Sister while he was incarcerated. (doc. 3 at 3-4.)[3]

According to Plaintiff, Aunt was his father's sister; Sister had a different father and was not a blood relative of Aunt. (*Id.* at 4, 8.) Aunt was married and had a son (Son), but both her husband and Son predeceased her. (*Id.* at 8-9.) Before his death, Son hired Sister to care for her and handle her business affairs through a power of attorney. (*Id.* at 9-10.) Sister moved Aunt to a nursing home, moved her own daughter into Aunt's home, and "misappropriated" Aunt's social security retirement

---

[1]By *Special Order No. 3-251*, this *pro se* prisoner case has been automatically referred for judicial screening.

[2]Easter also initially named the "City of Dallas Probate Division" as a defendant but clarified in his responses to a magistrate judge's questionnaire that he is not pursuing any claims against this non-jural entity. (*See* doc. 7 at 2.)

[3]Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

checks after Son died. (doc. 7 at 3.)

Aunt had a will at the time of her death that named her sole grandchild as the heir to her estate, but the grandchild signed a disclaimer disavowing any interest in it. (*Id.* at 4.) Sister knew that Plaintiff was incarcerated, but she did not tell him about the death of Son or Aunt. (*Id.* at 5.) She opened probate proceedings for Aunt's estate in the Dallas County probate court, signed documents in the probate proceedings as her "niece," and was awarded Aunt's estate by Judge. (doc. 3 at 3-5, 10.) Four years after Aunt's death, a relative sent Plaintiff a letter in prison advising that Aunt had died, and that Sister "had gotten all of Aunt's stuff." (*Id.* at 9.)

Plaintiff filed a *pro se* "legal petition" with the probate court, explaining that he was entitled to the estate as the only remaining blood relative who had not disclaimed an interest in the estate, and that Sister, as a non-relative, had no right to submit Aunt's will for probate because a power of attorney designation ends at death. (*Id.* at 10.) He also alleged that Sister committed larceny, embezzlement, and theft; falsely filed documents indicating that she was Aunt's "niece" to improperly obtain the estate; and that she never told him about the deaths of Aunt or Son. (*See*, *e.g.*, doc. 3 at 10; doc. 7 at 5.)  Instead of fixing the error by holding an evidentiary hearing, Judge gave Plaintiff a cause number and sent him a "letter" stating that he could not maintain care, custody, and control over the estate because of his incarceration, "hindering [his] pursuit." (doc. 7 at 1, 5.) Plaintiff claims that this letter showed that Judge realized she had improperly awarded the estate to Sister. (*Id.*) Judge's failure to stop Sister from possessing the estate despite her criminal conduct allegedly amounts to reckless disregard, displays malice, and shows that she "colluded" with Sister, who may have worked at the courthouse at the same time as Judge and has a daughter with the same first name as Judge. (doc. 3 at 11-13; doc. 7 at 5.)  Plaintiff continued to pursue the estate after

2

receiving Judge's letter, and he "wrote the probate division for years without a response" since he received the first letter from the court "almost 15 years ago." (doc. 7 at 5, 6.)

Plaintiff's lawsuit appears to contend that Judge: (1) violated her "fiduciary duties" and Texas probate law by awarding the property to Sister and not holding an evidentiary hearing when presented with Plaintiff's claim to the estate; (2) "colluded" with Sister to "defraud" him of his interest in the estate; (3) violated his due process rights by "hindering" his pursuit of the estate by failing to award it to him or hold an evidentiary hearing; and (4) acted with deliberate indifference in awarding the estate to Sister. (*See*, *e.g.*, doc. 3 at 3, 4, 10, 11; doc. 7 at 1, 3, 6, 9, 10.) It also appears to claim that Sister: (1) filed a false statement, i.e., that she was Aunt's niece, in the probate proceeding; (2) conspired with Judge to defraud Plaintiff of his interest in the estate; (3) discriminated against him with deliberate indifference; (4) employed cruel and unusual punishment against him; (5) committed criminal acts such as embezzlement and/or larceny; (6) converted the property; and (7) committed fraud by withholding the fact that Aunt had died. (*See*, *e.g.*, doc. 3 at 3, 4, 9, 10, 12; doc.7 at 3, 5, 6, 8, 9, 10, 11.) He seeks the return of funds that Sister misappropriated, including social security benefit checks that Aunt received after Son's death, funds in Aunt's bank account (including those that were used to purchase property in Paris, Texas), and proceeds from Aunt's life insurance policies; the return of two houses to the estate, as well as rental income that those properties generated; an order awarding the estate to him; $100,000 in compensatory damages; $175,000 in mental anguish damages; unspecified punitive damages; criminal prosecution of Sister; and the return of black-and-white photos from the 1800's. (doc. 3 at 11; doc. 7 at 11.)

## II. PRELIMINARY SCREENING

Plaintiff is a prisoner who has been permitted to proceed *in forma pauperis*. As a prisoner

seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening under 28 U.S.C. 1915A. *See Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998) (per curium). Because he is proceeding *in forma pauperis*, his complaint is also subject to screening under 1915(e)(2). Both 1915(e)(2)(B) and 1915(A)(b) provide for *sua sponte* dismissal of the complaint, or of any part of it, if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A claim fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III. JURISDICTION

Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). Courts have "a continuing obligation to examine the basis of their jurisdiction." *See MCG, Inc. v. Great W. Energy Corp.*, 896 F.2d 170, 173 (5th Cir. 1990). They may *sua sponte* raise the jurisdictional issue at any time. *Id.*; *Burge v. Parish of St. Tammany*, 187 F.3d 452, 465-66 (5th Cir. 1999).

A.    *__Rooker-Feldman__ Doctrine*

The *Rooker-Feldman* doctrine occupies "narrow ground" and divests federal district courts of jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."[4] *Exxon Mobil Corp.*, 544 U.S. at 284; *see also Behr v. Campbell*, 8 F.4th 1206, 1209 (11th Cir. 2021) (noting that the doctrine occupies "narrow ground") (further citations omitted). "[F]ederal district courts, as courts of original jurisdiction, lack appellate jurisdiction to review, modify, or nullify final orders of state courts." *See Weekly v. Morrow*, 204 F.3d 613, 615 (5th Cir. 2000) (quoting *Liedtke v. State Bar*, 18 F.3d 315, 317 (5th Cir. 1994)). Only the United States Supreme Court has exclusive jurisdiction to review final judgments or decrees entered by the highest court of a state. 28 U.S.C. 1257. The *Rooker-Feldman* doctrine has four elements: (1) a state-court loser; (2) alleging harm caused by a state-court judgment; (3) that was rendered before the federal suit began; and (4) the federal suit requests review and reversal of the state-court judgment. *Houston v. Venneta Queen*, 606 F. App'x 725, 730 (5th Cir. 2015) (citing *Exxon Mobil Corp.*, 544 U.S. at 284).

The *Rooker-Feldman* doctrine bars consideration of direct attacks on a state court judgment, as well as all claims that are inextricably intertwined with the state court proceedings. *See AEP Energy Services Gas Holding Co. v. Bank of Am.*, N.A., No. CIV.H-03- 4973, 2004 WL 2278770, at *11 (S.D. Tex. Sept. 14, 2004) ("In other words, when claims asserted at the state and federal

---

[4]This doctrine is named after *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). These decisions "exhibit the limited circumstances in which [the Supreme] Court's appellate jurisdiction over state-court judgments, 28 U.S.C. § 1257, precludes a United States district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority." *Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 290 (2005).

levels are so interwoven that the federal court is 'in essence being called upon to review the state-court decision,' the *Rooker-Feldman* doctrine divests the federal court of subject matter jurisdiction to conduct such a review.") (citing *Davis v. Bayless*, 70 F.3d 367, 375-76 (5th Cir. 1995); *United States v. Shepard*, 23 F.3d 923, 924 (5th Cir. 1994)); *see also Roland v. Texas*, CIVIL ACTION NO. 4:21-CV-415-SDJ-CAN, 2022 WL 1192781, at *7, n.10 (E.D. Tex. Jan. 26, 2022), *rec. accepted* 2022 WL 622320 (E.D. Tex. Mar. 3, 2022); *Illinios Cent. R.R. Co. v. Guy*, 682 F.3d 381, 390-91 (5th Cir. 2012) (noting that, while "the doctrine usually applies only where a plaintiff explicitly attacks the validity of a state court's judgment, it can also apply if the plaintiff's claims are so inextricably intertwined with a state court judgment that the federal court is in essnce being called upon to review a state court decision") (internal quotation marks and citations omitted); *Weaver v. Tex. Capital Bank, N.A.*, 660 F.3d 900, 904 (5th Cir. 2011) (per curiam) (noting that, in Fifth Circuit jurisprudence, "[a] state court judgment is attacked for purposes of *Rooker-Feldman* 'when the [federal] claims are "inextricably intertwined" with a challenged state court judgment,' or where the losing party in a state court action seeks 'what in substance would be appellate review of the state judgment'") (citations omitted).

### 1.    *Award of Estate*

Plaintiff's allegations regarding the award of Aunt's estate to Sister appear to satisfy the last three elements of the *Rooker-Feldman* analysis.  He appears to contest the state-court action that awarded Aunt's estate to Sister.  He essentially claims that this judgment was illegally obtained and allowed Sister to steal his property. An award of relief on his claims would require evaluation and rejection of  the state court judgment and a finding that Plaintiff is the rightful heir and that Sister either purportrated a fraud on the state court or acted illegelly in concert with Judge to obtain it.

6

Ordinarily, the *Rooker-Feldman* doctrine would bar that kind of relief because the source of the injury is the judgment and the requested remedy is the undoing of that judgment. *See*, *e.g.*, *Sims v. McDilda*, SA-20-CV-00722-XR, 2021 WL 84355, at *4 (W.D. Tex. Jan. 11, 2021) (noting that claims for injuries suffered as a result of a state court judgment—and not pre-judgment conduct— trigger the *Rooker-Feldman* doctrine); *Blessett v. Garcia*, 816 F. App'x 945, 950 (5th Cir. 2020) (per curiam) (confirming that the *Rooker-Feldman* doctrine does not bar all claims of fraud emanating from concluded state court proceedings but "a litigant cannot circumvent the doctrine's scope by merely casting his or her challenge to a state court judgment as an allegation that the judgment was obtained through fraud. If the relief a litigant requests would in substance require the federal court to invalidate a prior state court judgment, the *Rooker-Feldman* doctrine may still be implicated.") (citations omitted).

Nevertheless, it is not clear that Plaintiff was a "state court loser". The *Rooker-Feldman* doctrine does not apply "where the party against whom the doctrine is invoked was a not a party to the underlying state-court proceeding [,]" and therefore "was in no position to ask this Court to review the state court's judgment and has not directly attacked it in this proceeding." *Lance v. Dennis*, 546 U.S. 459 at 464-465 (2006) (citing *Johnson v. De Grandy*, 512 U.S. 997, 1006 (1994)). *Lance* further clarified that a plaintiff is not a state court loser for purposes of *Rooker-Feldman* just because it is in privity with a party to the earlier state court action. *Id.* at 466 (noting that "[t]he *Rooker-Feldman* doctrine does not bar action by nonparties to the earlier state-court judgment simply because, for purposes of preclusion law, they could be considered in privity with a party to the judgment."). In determining when *Rooker-Feldman* might bar the claims of a non-party to a state court judgment, courts have focused on whether the non-party was able to appeal the pertinent state

court decision. *See, e.g., Bartolini v. Mongelli*, 17-CV-06276 (PKC) (SJB), 2018 WL 638771, at *3 (E.D.N.Y. Dec. 4, 2018) ("As this Court understands the current doctrine, the core issue is whether Plaintiff, though not formally a party to the probate proceeding, had an opportunity—even if he did not make use of it—to appeal the alleged harm he suffered from the Surrogate's Court's ruling in an action in which he did not have standing to participate.") (citing *Lance*, 546 U.S. at 465). Here, the exact terms of the judgment or order awarding the estate to Sister are unclear, as Plaintiff is not sure that a judgment was entered.[5] He complains that he was not aware of the probate proceedings until after the estate was awarded to Sister. When he filed a petition, the probate court sent him a letter instead of holding an evidentiary hearing.

It is also unclear whether Plaintiff could have appealed the judgment. Section 55.001 of the Texas Estates Code provides that: "A person interested in an estate may, at any time before the court decides an issue in a proceeding, file written opposition regarding the issue. The person is entitled to process for witnesses and evidence, and to be heard on the opposition, as in other suits." The term "person interested" means an heir or any other person having a property right in an estate being administered. *Id.* at 22.018(1). Plaintiff alleges that he was not aware of the disposition of the property to Sister until after the fact, and Section 55.001 only allows a written opposition before an issue has been decided, so he likely would have lacked standing to appeal it. *See Estate of Lambeck*, No. 04-17-00065, 2017 WL 4655020, at *2 (Tex. App.—San Antonio, 2017 no pet.) (mem. op.) (analyzing whether a party had standing to appeal a probate judgment by asking whether the party could file a written opposition under Section 55.001 of the Texas Estates Code).

---

[5]Plaintiff responded to two magistrate judge's questionnaires (MJQ). His answers constitute amendments to his complaint. *See Macia v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994). When questioned in an MJQ whether the estate was awarded by judgment or order, Plaintiff responded, "I don't know." (doc. 11 at 1.)

To the extent that Plaintiff was a party to the judgment awarding the estate, or had the ability to appeal it and simply did not do so, the *Rooker-Feldman* doctrine would preclude jurisdiction over his request to essentially undo the probate court's judgment and award him the estate. If he was not a party to the judgment or could have appealed it, which may be inferred from his allegations, the judgment awarding the estate does not trigger the *Rooker-Feldman* doctrine.

### 2. *Letter from Judge*

Plaintiff also appears to contest a letter he received from Judge refusing to hold an evidentiary hearing regarding his claim to the estate. The *Rooker-Feldman* doctrine only applies to final judgments. *See, e.g.*, *Burciaga v. Deutsche Bank National Trust Company*, 871 F.3d 380, 385 (5th Cir. 2017) (citing *Ill. Cent. R. Co.*, 682 F.3d at 390) (stating that *Rooker-Feldman* applies only to state court "final judgment[s]"). To be a final judgment under Texas law, the the judgment must determine the rights of the parties and dispose of all the issues involved so that no future action by the court will be necessary to settle and determine the entire controversy. *See Wagner v. Warnasch*, 156 Tex. 334, 295 S.W.2d 890, 892 (Tex. 1956).

It is unclear whether the letter was an order or judgment, or just an informal communication from the court. Plaintiff says that he was given a cause number, but he provides no other details. Because it is not clear that the letter from Judge was a final judgment, it does not appear to implicate the *Rooker-Feldman* doctrine.

### B.    <u>Probate Exception</u>

"The probate exception is a judicially created limitation on federal court subject matter jurisdiction...." *Mitchell v. Jefferson*, No. 5:18CV21-JRG-CMC, 2018 WL 1516773, at *9 (E.D. Tex. Mar. 28, 2018) (citing *Lemery v. Ford Motor Co.*, 205 F.Supp. 2d 710, 712 (S.D. Tex. 2002)). Under

this exception, federal courts are prohibited from "(1) probating or annulling a will or (2) seek[ing] to reach a res in custody of a state court' by endeavoring to dispose of [such] property." *Curtis v. Brunsting*, 704 F.3d 406, 409 (5th Cir. 2013) (alterations in original) (quoting *Marshall v. Marshall*, 547 U.S. 293, 312-13 (2006)). The Fifth Circuit has held that the determination of "whether the probate exception deprives a federal court of jurisdiction...requires a two-step inquiry into (1) whether the property in dispute is estate property within the custody of the probate court[,] and (2) whether the plaintiff's claims would require the federal court to assume in rem jurisdiction over that property." *Id.* If the answer to both questions is yes, then the probate exception precludes a federal court from exercising subject matter jurisdiction.

Liberally construing his pleadings, Plaintiff claims entitlement to: (1) Aunt's social security benefit checks obtained after the death of her son but before her death, (2) Aunt's life insurance policy or policies, (3) the life insurance policy of Aunt's son, who predeceased her, (4) the money in Aunt's bank account, which Sister used to purchase property; and (5) two houses that belonged to Aunt, as well as rental money generated from those houses. (doc. 3 at 11; doc. 7 at 11.) As for the two houses in particular, he asks the Court to return this property and the rental income it generated to the estate and to then award the estate to him.

Initially, social security benefits or other funds taken from Aunt before she died were not part of the estate at the time of her, and the probate exception does not apply. *Osborn v. Griffin*, 865 F.3d 417, 435 (6th Cir. 2017) (noting that "property that a party removes from a decedent's estate prior to his death is not part of the res that is distributed by the probate court..."). Similarly, a decedent's life insurance proceeds are not subject to disposition by will, are not subject to the rules of intestate distribution, and are therefore not part of a decedent's estate under Texas law. *See Valdez v.*

*Ramirez*, 574 S.W.2d 748, 750 (Tex. 1978). The probate exception also does not apply to them.

Nor does the probate exception bar Plaintiff's claim for in personam damages, such as his claims for mental anguish damages. *See*, *e.g.*, *Balestra v. Balestra-Leigh*, No. 3:09-CV-00563-RCJ-(RAM), 2010 WL 2836400, at *3 (D. Nev. July 15, 2010) ("If a plaintiff seeks a judgment out of estate property, the probate exception applies to bar federal jurisdiction. But, if he seeks only general in personam damages against a representative of an estate or a third-party stemming from testamentary or probate matters, the probate exception does not apply.") (citing *Lefkowitz v. Bank of New York*, 528 F.3d 102, 107-08 (2d Cir. 2007); *see also Jones v. Brennan*, 465 F.3d 304, 307-08 (7th Cir. 2006) (holding that a claim for breach of fiduciary duty against the administrator of the estate is not subject to the probate exception).

The probate exception does preclude jurisdiction over any claim "seek[ing] to set aside or appropriate assets that a probate court previously distributed" and then awarding those assets in a manner different from the probate court, however. *Carroll v. Hill*, 559 F.Supp.3d 645, 653 (N.D. Ohio 2021) (citing *Marshall*, 547 U.S. at 311-12); *Cartwright v. Estate of Peterson*, No. 3:17-cv-01464, 2018 WL 4945232, at *4 (M.D. Tenn. July 2, 2018)). In *Carroll*, the plaintiff sought, among other things, to "invalidate the will and estate distribution and declare her the 'lawful heir...'" *Carroll*, 559 F.Supp.3d at 653. The court found that the probate exception barred that kind of relief because it would require the court to "invalidate an estate probated 20 years ago." *Id.*

So too here, the probate exception does not allow alteration of the distribution of property from an estate that was probated years ago. It precludes jurisdiction over Plaintiff's claims to put property back into the custody of the estate and then award the estate to him. As noted, however, Plaintiff also requests other kinds of relief, and not all of the property at issue was in the estate.

11

## IV. REPRESENTATION OF ESTATE

Plaintiff indicates that he is suing *pro se* on behalf of Aunt's estate. (doc. 7 at 4.)

Section 1654 allows parties in federal courts to "plead and conduct their cases personally or by counsel." 28 U.S.C. § 1654. "[I]ndividuals who do not have a law license may not represent other parties in federal court even on a next friend basis," however. *Weber v. Garza*, 570 F.2d 511, 514 (5th Cir. 1978); *Guajardo v. Luna*, 432 F.2d 1324 (5th Cir. 1970) (holding that only licensed lawyers may represent others in federal court). "A person with capacity under state law to represent an estate in a survival action may proceed *pro se* if that person is the only beneficiary and the estate has no creditors," however. *Rodgers v. Lancaster Police & Fire Dept.*, 819 F.3d 205, 211 (5th Cir. 2016). Plaintiff does allege that he is the only beneficiary because Aunt's grandchild disclaimed her interest in the estate, and that the the estate has no creditors. (*See* doc. 7 at 8.)

Plaintiff does not appear to make any survivor claims on behalf of the estate; for the most part, his claims are personal. He claims he has been harmed because the estate and other property was not awarded to him. The only relief he arguably seeks on behalf of the estate is for the monetary value of two houses that were in the estate—and the rent value that they generated—to be returned to the estate (and then awarded to him). (doc. 7 at 11.) But "generally, personal representatives of the decedent's estate are the only people entitled to sue to recover estate property." *Shepherd v. Ledford*, 962 S.W.2d 28, 21 (Tex. 1998). Under the Texas Estates Code, a "personal representative" is defined as an executor or administrator, or a successor thereof. TEX. EST. CODE. § 22.015. Plaintiff does not allege that he serves in any of those capacities.[6] Any claims on behalf of the estate should

---

[6]When it is alleged and proven that there is no administration pending and none necessary, an "heir" may also maintain an action to recover estate property. *See Turk v. Mangum*, 268 F.Supp.3d 928, 935 (S.D. Tex. 2017) (citing *Rodgers*, 819 F.3d at 212-13) (further citation omitted). An "heir" is defined under Texas law as a "person who is entitled under the statutes of descent and distribution to a part of the estate of a decedent who dies intestate."

be dismissed without prejudice.

## V. SECTION 1983

Plaintiff brings claims against Judge and Sister under 42 U.S.C. 1983. That statute "provides for a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a § 1983 claim, Plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution and the laws of the United States; and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005). "To state a cause of action under section 1983, the [plaintiff] must allege that the person who deprived him of a federal right was acting under color of law." *Priester v. Lowndes Cty.*, 354 F.3d 414, 420 (5th Cir. 2004).

### A.   Eleventh Amendment

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens or Subjects of any Foreign State."[7] "This withdrawal of jurisdiction effectively confers an immunity from suit." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). Therefore, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 663

---

Tex. Est. Code § 22.015. Aunt died with a will, so Plaintiff is not an "heir" under these facts. *See Turk*, 268 F.Supp.3d at 935 (noting that whether one is an "heir" for purposes of the Texas Surival Statute is determined by reference to the relevant sections of the Texas Estates Code).

[7] The terms "state soverign immunity" and "Eleventh Amendment immunity" are "often used interchangeably to mean the same thing." *Union Pacific R. Co. vv. Louisiana Public Service Com'n*, 662 F.3d 336, 340, n.4 (5th Cir. 2011) (citations omitted).

(1974). It is also well-settled that "[t]he Eleventh Amendment bars a suit against state officials when 'the state is the real, substantial party in interest.'" *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) (quoting *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945)), *overruled on other grounds by Lapides v. Bd. of Regents of Univ. Sch. Sys. of Georgia*, 535 U.S. 613 (2002). Eleventh Amendment immunity applies to both federal and state law claims brought in federal court. *See Raj v. La. State Univ.*, 714 F.3d 322, 328-29 (5th Cir. 2013) (determining that sovereign immunity bars both federal and state law claims brought in federal court); *Robertson v. McShan*, No. 05-20055, 2005 WL 2673516, at *1 (5th Cir. Oct. 20, 2005) (per curium) (finding that Eleventh Amendment immunity divests federal courts of jurisdiction to hear both federal and state law claims).

Although Congress has the power to abrogate that immunity through the Fourteenth Amendment, *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72–76 (2000), and the State may waive its immunity by consenting to suit, *AT&T Commc'ns v. BellSouth Telecomms. Inc.*, 238 F.3d 636, 643 (5th Cir. 2001), the State has not waived its immunity by consenting to suit, nor has Congress abrogated the Eleventh Amendment immunity by enacting 42 U.S.C. § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Hines v. Miss. Dep't of Corr.*, No. 00-60143, 2000 WL 1741624, at *3 (5th Cir. Nov. 14, 2000) (per curiam). Additionally, "Congress did not abrogate Eleventh Amendment immunity by granting federal courts supplemental jurisdiction over state law claims in 28 U.S.C. § 1367(a)." *Roberson*, 2005 WL 2673516, at *1 (citing *Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 541–42 (2002)).

Plaintiff sues Judge in her official capacity only. (*See* doc. 7 at 1; doc. 3 at 4.) An official capacity claim is merely another way of pleading an action against the entity of which the individual

defendant is an agent. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Plaintiff's suit against Judge in her official capacity is a suit against the State. *See Florance v. Buchmeyer,* 500 F. Supp. 2d 618, 638–39 (N.D. Tex. 2007); *see also Elie v. Ashford*, No. 3:16-CV-2032-L-BH, 2016 WL 4276009, at *2 (N.D. Tex. July 14, 2016), *rec. accepted* 2016 WL 4268930 (N.D. Tex. Aug. 15, 2016). Because there is no waiver, absent an exception, the Eleventh Amendment bars Plaintiff's claims against Judge.

The Supreme Court has created an exception to Eleventh Amendment immunity for suits for injunctive or declaratory relief against individual state officials. *Raj*, 714 F.3d at 328 (citing *Ex parte Young*, 209 U.S. 123, 155–56 (1908)); *see also Nelson v. Univ. of Tex. at Dallas*, 535 F.3d 318, 321–22 (5th Cir. 2008) ("Pursuant to the *Ex Parte Young* exception, the Eleventh Amendment is not a bar to suits for prospective relief against a state employee acting in his official capacity."). Under this exception, "claims against state officials for prospective injunctive relief under § 1983 . . . are not barred by sovereign immunity." *Kobaisy v. Univ. of Miss.*, 624 F. App'x 195, 198 (5th Cir. 2015) (citing *Nelson*, 535 F.3d at 324); *see May v. N. Tex. State Hosp.*, 351 F. App'x 879, 880 (5th Cir. 2009) (citing *Aguilar v. Tex. Dep't of Crim. Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998) (stating that the *Ex Parte Young* exception "applies to suits that allege a violation of federal law that are 'brought against individual persons in their official capacities as agents of the state, and the relief sought must be declaratory or injunctive in nature and prospective in effect.'")). For the *Ex parte Young* exception to apply, the suit must "(1) be brought against state officers who are acting in their official capacities; (2) seek prospective relief to redress ongoing conduct; and (3) allege a violation of federal, not state, law." *Williams on Behalf of J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020) (citing *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015)).

To the extent that Plaintiff is seeking injunctive relief, he does not identify an *ongoing* federal violation. He alleges only violations that previously occurred. Accordingly, the Eleventh Amendment bars Plaintiff's official-capacity claims—whether premised upon state or federal law—against Judge. *See Turnage v. Britton*, 29 F.4th 232, 239 (5th Cir. 2022) ("*Young* does not apply when the injurious conduct occurred 'at one time or over a period of time in the past.'") (citing *Corn v. Miss. Dep't of Pub. Safety*, 954 F.3d 268, 275 (5th Cir. 2020) (citing, in turn, *Papasan v. Allain*, 478 U.S. 265, 278 (1986)).[8]

## B.    State Actor Requirement

Plaintiff asserts a § 1983 conspiracy claim against Sister for "colluding" with Judge to "defraud" him of his interest in the estate, presumably in violation of his due process rights. (*See* doc. 7 at 5.) He also claims that Sister discriminated against him with deliberate indifference, and, in some unspecified way, employed cruel and unusual punishment. (*See* doc. 7 at 3.)[9]

"To state a cause of action under section 1983 [the plaintiff] must allege that the person who

---

[8]Even if Plaintiff were seeking monetary damages against Judge in her individual capacity, absolute judicial immunity would bar such claims. The actions about which Plaintiff complains were judicial in nature. (*See* doc. 7 at 5.) He does not allege that she acted in the absence of jurisdiction. *Stewart v. Criminal Dist. Court of La.*, Civil Action No. 08-3731, 2008 WL 4758610, at *2 (E.D. La. Oct. 30, 2008) ("Because there is no question that Judge Marullo has jurisdiction over plaintiff's criminal case and that any of his rulings in that matter are performed in the exercise of his judicial functions, he is entitled to absolute immunity.); *Knight v. 24th Judicial Dist. Court Section A*, Civil Action No. 06-4537, 2006 WL 4017837, at *2 (E.D. La. Oct. 17, 2006); *Blaney v. Meyers*, No. 3:08-CV-1869-P, 2009 WL 400092, at *2 (N.D. Tex. Feb. 17, 2009) (judges' actions—making trial and pre-trial rulings—were done in their "capacities and functions as judges"); (citing *Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994)); *Dominic v. Goldman*, 560 F.Supp.3d 579 (D.N.H. 2021) (finding that probate judge was entitled to absolute judicial immunity because her actions in appointing an executor and special administrator  and denying recusal motion and motions to toll the statute of limitations were taken in judge's capacity as judge of the probate court). This absolute judicial immunity applies even though it is alleged that Judge acted in a conspiracy and "committed grave procedural errors." *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991). This same analysis—and immunity— applies to any claims for monetary damages against Judge in her individual capacity under Texas law. *See Sharp v. Palmisano*, No. 16-5429, 2013 WL 5969661, at *4 (E.D. La. Nov. 8, 2013) (citing *Hawkins v. Walvoord*, 25 S.W.3d 882, 890 (Tex. App.–El Paso 2000, pet. denied) (recognizing that Texas' judicial immunity principles mirror the federal judicial immunity doctrine).

[9]Although Plaintiff claims that Sister worked at one point for the city of Dallas, he admits that he cannot "truthfully state if she was employed by the City at the time of this incident." (doc. 7 at 5.)

deprived him of a federal right was acting under color of [state] law." *Priester v. Lowndes v. Cty.*, 354 F.3d 414, 420 (5th Cir. 2004). To show a conspiracy between a private citizen like Sister and a state actor sufficient to satisfy § 1983's state action requirement, a plaintiff must "allege specific facts showing '(1) an agreement between the private and public defendants to commit an illegal act and (2) a deprivation of constitutional rights.'" *Bogus v. Harris County District Attorney*, 830 F. App'x 746, 748 (5th Cir. 2020) (citing *Priester*, 354 F.3d at 420). A bald allegation that a conspiracy exists, unsupported by any factual allegations, is insufficient. *Lynch v. Cannatella*, 810 F.2d 1363, 1370 (5th Cir. 1987); *see also Green v. State Bar of Tex.*, 27 F.3d 1083, 1089 (5th Cir. 1994) (stating that a plaintiff is required to allege facts sufficient to suggest an agreement among one or more parties).

Plaintiff "believes" a conspiracy existed because Sister and Judge may have at one time worked in the same building and because Sister has a daughter with the same first name is Judge. (*See* doc. 7 at 3, 5.) These allegations are totally speculative and do not show an agreement of any kind between the two defendants. *See Bogus*, 830 F. App'x at 748 (refusing to find a conspiracy supported only by speculative and conclusory allegations). Any claims against Sister under § 1983 should be dismissed for failure to state a claim.[10]

---

[10]Any § 1983 claims are also time-barred. "The statute of limitations for a suit brought under § 1983 is determined by the general statute of limitations governing personal injuries in the forum state."*Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir.), *cert. denied*, 534 U.S. 820 (2001). In view of Texas' two-year statute of limitations for personal injury claims, Plaintiff "had two years to file suit from the date" that his § 1983 claims accrued. *Id.*; *see also Hatchet v. Nettles*, 201 F.3d 651, 653 (5th Cir. 2000). "The cause of action accrues, so that the statutory period begins to run, when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Gonzales v. Wyatt*, 157 F.3d 1016, 1020 (5th Cir. 1998). Here, Plaintiff alleges that he has been writing the "probate division for years without a response" to contest the award of Aunt's estate to Sister, and that his "letters are unanswered since [he] got the first one almost 15 years ago." (doc. 7 at 5.) Because there are no apparent grounds for tolling of the limitations period, any § 1983 claims may also be dismissed as untimely. *See Hunter v. Christian*, CIVIL ACTION NO. 21-cv-1137, 2021 WL 2046429, at *2 (W.D. La. May 3, 2021) (dismissal of § 1983 claims at the pleading stage appropriate where the claims were plainly untimely and there were no "apparent exceptions or grounds for tolling of the limitations period").

## VI. STATE LAW CLAIMS

Plaintiff also alleges state law causes of action against Sister.[11]

Under § 1367(a), federal courts have "supplemental jurisdiction over all other claims that are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." In essence, § 1367(a) grants the courts the "power to hear a state law claim under pendant or supplemental jurisdiction if (1) the federal issues are substantial, even if subsequently decided adverse to the party claiming it; and (2) the state and federal claims derive from a common nucleus of operative fact." *McKee v. Texas Star Salon, LLC*, No. 3:15-CV-1162-D, 2007 WL 2381246, at *4 (N.D. Tex. Aug. 21, 2007) (citations omitted); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 727 (1996). When all federal claims are dismissed prior to trial, the general rule in this circuit is to decline exercising jurisdiction over the remaining state law claims. *LaPorte Constr. Co. v. Bayshore Nat'l Bank*, 805 F.2d 1254, 1257 (5th Cir. 1986); see also 28 U.S.C. 1367(c)(3).[12] This rule is "neither mandatory nor absolute." *Smith v. Amedisys Inc.*, 298 F.3d 434, 447 (5th Cir. 2002) (citation omitted). Rather, district courts are given wide discretion in deciding whether to exercise jurisdiction under such circumstances. *See*

---

[11]Plaintiff also alleges state law causes of action against Judge; as discussed, the Eleventh Amendment bars those claims against Judge in her official capacity, which is the only capacity in which he sues her.

[12]Under § 1367(c), a court may decline to exercise supplemental jurisdiction over a state claim if:

(1)     the claim raises a novel or complex issue of law,

(2)     the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3)     the district court has dismissed all claims over which it had original jurisdiction, or

(4)     in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

*Heaton v. Monogram Credit Card Bank*, 231 F.3d 994, 997 (5th Cir. 2000); *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993); *see also United Mine Workers*, 383 U.S. at 726 ("[P]endant jurisdiction is a doctrine of discretion, not of [a] plaintiff's right."). In exercising this discretion, courts should consider issues of judicial economy, convenience, and fairness to the litigants. *LaPorte Constr. Co.*, 805 F.2d at 1257. However, "no single factor is dispositive." *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008).

Here, the factors weigh in favor of retaining jurisdiction over Plaintiff's state law claims because they arise from the same "common nucleus of operative facts" as his federal claims. Requiring Plaintiff to litigate his claims in state court would "necessarily require consideration by two district courts of the same operative fact[s]" and the "same legal issues." *See McKee*, 2007 WL 2381246, at *4. Given that Plaintiff's claims are meritless, allowing him to file suit in state court would impose unnecessary expenses on the court system and the parties involved. *See McCall v. Peters*, No. 3:00-CV-2247-D, 2003 WL 21488211, at *12 (N.D. Tex. May 11, 2003), *aff'd*, 108 F. App'x 862 (5th Cir. 2004) (in determining whether to exercise pendant or supplemental jurisdiction, the court may consider factors such as the amount of time and resources spent adjudicating a case).

## A.    **Fraud**

The filing-false-documents and withholding-information claims may be liberally construed as fraud claims. A valid fraud claim under Texas law includes six elements: (1) the defendant made a material, actionable representation; (2) the representation was false; (3) the defendant knew the representation was false or made it recklessly without any knowledge of its truth; (4) the defendant intended to induce the plaintiff to act upon the representation; (5) the plaintiff actually and justifiably relied upon the false representation; and (6) the plaintiff thereby suffered injury. *See Visa,*

19

*Inc. v. Sally Beauty Holdings, Inc.*, Docket No. 02-20-00339-CV, 2021 WL 5848758, at *12 (Tex. App.—Fort Worth Dec. 9, 2021) (petition for review filed Tex. No. 22-0024, Feb. 23, 2022) (further citations omitted).

Plaintiff fails to allege that he relied on the supposedly false statement made to the probate court. In fact, he claims that he did not know about the statement; when he discovered it, he contested it. Any fraud claim premised upon a false statement to the probate court lacks merit.

As for the claim that Sister illegally withheld information from him about Aunt's death, failure to disclose information will not constitute fraud unless there is first a duty to disclose the information. *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001). Such a duty to disclose information usually depends on a fiduciary relationship. Absent a fiduciary relationship, such a duty to disclose is present in three situations: (1) when a party voluntarily discloses information, the party has the duty to disclose the whole truth; (2) when a party makes a representation, he has a duty to disclose new information when he is aware the new information makes the earlier representation misleading or untrue; and (3) when a party makes a partial disclosure and conveys a false impression, the party has a duty to speak. *See George Joseph Assets, LLC v. Chenevert*, 557 S.W.3d 755, 765 (Tex. App.—Houston [14th Dist.] 2018, pet. denied.).

Plaintiff does not allege the existence of a fiduciary relationship between himself and Sister, and a family relationship does not by itself establish a fiduciary relationship. *Texas Bank & Trust Co. v. Moore*, 595 S.W.2d 502, 508 (Tex. 1980). Nor does Plaintiff allege facts showing that any of the other circumstances under which a duty to disclose might exist. This claim is meritless.

**B.**    **Conspiracy to Commit Fraud**

Plaintiff also claims that Sister and Judge "colluded" to "defraud" him of his interest in the

estate. To establish a conspiracy claim, Plaintiff must prove both civil conspiracy and underlying fraud or concealment. *See American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 438 (Tex. 1997). The elements of a civil conspiracy under Texas law require: (1) two or more persons; (2) with an object to be accomplished; (3) who have a meeting of the minds on the object or course of action; (4) who commit one or more unlawful, overt acts; and (5) damages proximately result. *Leigh v. Danek Medical, Inc.*, 28 F.Supp.2d 401, 405 (N.D. Tex. 1998). As discussed, Plaintiff has not adequately alleged a fraud claim—either by affirmative misrepresentation or omission. He also admits that his claim is speculative, and he alleges no facts showing an agreement between Judge and Sister to do anything, much less engage in fraud. This claim is meritless.

## C.   <u>Criminal Statutes</u>

Plaintiff also appears to allege that Sister engaged in criminal activity. He claims that she stole social security benefit checks from Aunt, illegally cashed Aunt's life insurance policies, and committed larceny, embezzlement, and fraud to obtain the estate. (doc. 7 at 3, 8-9, 11.)

To the extent that Plaintiff purports to assert claims under the Texas Penal Code, he does not have standing to pursue violations of the criminal statutes. *See Burch v. Freedom Mortgage Corp.*, No. 4:19-CV-629-A, 2019 WL 5457687, at *3 (N.D. Tex. Oct. 24, 2019) (citing *Clark v. Bank of Am.*, N.A., No. SA-13-CA-281-BP, 2014 WL 12580443, at *3-4 (W.D. Tex. Mar. 20, 2014); *Purported Lien or Claim Against Yolanda Bond v. Barrett Daffin Frappier Turner & Engel, LLP*, No. G-12-188, 2013 WL 1619691, at *10 (S.D. Tex. Mar. 22, 2013)).[13]

---

[13]If Plaintiff is seeking a writ of mandamus compelling Judge or some other state official to intiate criminal proceedings against Sister, that relief is also unavailable in this action. *See, e.g.*, *Ochoa v. Collier*, 802 F. App'x 101, 105 (5th Cir. 2020) (noting that federal courts "do not have jurisdiction to issue a writ [of mandamus] against a state actor or state agencies") (citing *Moye v. Clerk, Dekalb Cty. Superior Court*, 474 F.2d 1275, 1276 (5th Cir. 1973)).

D.    <u>**Conversion**</u>

Plaintiff's claims that Sister kept Aunt's property from him may also be liberally construed as alleging a conversion claim.

"The unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with owner's rights, is in law a conversion." *Hunt v. Baldwin*, 68 S.W.3d 117, 131 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (quoting *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971)). The elements of a cause of action for conversion are "(1) the plaintiff owned or had possession of the property or entitlement of possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property." *Burns v. Rochon*, 190 S.W.3d 263, 268 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

As noted, any life insurance proceeds from Aunt's life insurance policy and post-death social security survivor benefits are not estate property; Plaintiff, who only claims an interest in the estate, does not state any plausible ownership claim to them. As for property allegedly stolen from Aunt before her death, it was also not property of the estate, and Plaintiff has not alleged any facts showing ownership of it. As for the former estate property, Plaintiff has not alleged that Sister's possession of estate property was unlawful for purposes of conversion, since he alleges that she possessed it under a court order. It is well-established that one possessing property under the terms of a court order that is valid on its face is not liable for conversion. *See*, *e.g.*, *Little v. Fulps*, No. 05-02-827-CV, 2002 WL 31831367, at *1 (Tex. App.—Dallas Dec. 18, 2002) (unpublished) (holding that plaintiff did not satisfy unlawful and unauthorized prong where seizure was pursuant to "facially

valid court order [and] in accordance with its terms"); *Hornibrook v. Richard*, 488 Mass. 74, 83 (2021) (no claim for conversion when the house at issue was sold pursuant to order of a probate court); *see also Whitehead v. Allied Signal, Inc.*, 1998 WL 874868, at *2 (10th Cir. 1998) ("It is a general rule of tort law that court orders validate actions that would otherwise constitute intentional property torts such as conversion and trespass.") (citations omitted). While Plaintiff claims that the award of the estate to Sister violated probate law and was generally incorrect, he does not allege that the state probate court lacked the jurisdiction to enter the award, or that it was irregular in form. *See, e.g.*, *American States Ins. Co. v. Citizens Fidelity Bank & Trust Co.*, 662 S.W.2d 851 (Ky. App. 1983) (explaining that, for purposes of whether court order serves as a privilege to tort of conversion, an order is valid or fair when it is (1) regular in form, (2) issued by a court having the authority to issue it and jurisdiction over the property, and (3) issued after all other proceedings required for its proper issuance have duly taken place). He fails to allege Sister's possession of the estate property was unlawful for purposes of conversion. Nor does Plaintiff allege the remaining elements of a conversion claim—that he demanded return of the property from Sister, and that she refused to return it.[14]

In conclusion, exercise of supplemental jurisdiction over Plaintiff's state law claims is appropriate, and his claims against Sister should be dismissed with prejudice for failure to state a

---

[14]Additionally, Plaintiff's state law claims are untimely. The statute of limitations for fraud under Texas law is four years. *See* TEX. CIV. PRAC. & REM. CODE 16.004(a)(5). Claims of civil conspiracy to commit fraud are governed by a two-year statute of limitations under Texas law. *Navarro v. Grant Thorton, LLP*, 316 S.W.3d 715, 719 (Tex. App.—Houston [14th Dist., 2018, no pet,). Conversion claims are also governed by a two-year statute of limitations. TEX. CIV. PRAC. & REM. 16.003; *see also HEI Resources, Inc. v. S. Lavon Evans, Jr. Operating Co., Inc.*, Civil Action No. 5:09-CV-124, 2011 WL 1230338, at *7 (S.D. Tex. Mar. 29, 2011). "When possession is initially lawful and there is no demand and unqualified refusal, a cause of action accrues upon the discovery of facts supporting the cause of action, or upon demand and refusal, whichever occurs first." *Varel Mfg. v. Acetylene Oxygen Co.*, 990 S.W.2d 486, 498 (Tex. App.—Corpus Christi-Edinburg 1999, no pet.) (citations omitted). According to the complaint, Plaintiff knew about Sister's actions more than four years before he filed this suit; he filed a petition with the probate court 15 years before filing this suit. No basis for tolling limitations is apparent from the pleadings.

claim upon which relief can be granted.

## VII. OPPORTUNITY TO AMEND

The Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. *See Scott v. Brynes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001). Courts therefore typically allow *pro se* plaintiffs an opportunity to amend their complaints when the action is to be dismissed pursuant to a court order. *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2.

Leave to amend is not necessary, however, where the plaintiff has already plead his best case. *See Wiggins v. La. State Univ.-Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (citations omitted). A verified questionnaire response allows a plaintiff to plead his or her best case and is a valid way for a *pro se* litigant to amend his complaint. *See Nixon v. Abbott*, 589 F. App'x 279 (5th Cir. 2015) (per curiam) ("Contrary to Nixon's argument, he was given the opportunity to amend his complaint in his responses to the magistrate judge's questionnaire, which has been recognized as an acceptable method for a *pro se* litigant to develop the factual basis for his complaint."). Because Plaintiff responded to two questionnaires, he has pleaded his best case, and leave to amend is not warranted.

## VIII. RECOMMENDATION

All of Plaintiff's claims against Judge in her official capacity should be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction under the Eleventh Amendment. Any claims for the return of property to Aunt's estate and/or an order awarding him the estate should

also be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction under the probate exception to federal jurisdiction. Any claims on behalf of the estate should be **DISMISSED WITHOUT PREJUDICE**. Plaintiff's remaining claims against Sister should be **DISMISSED WITH PREJUDICE** under 28 U.S.C. §§ 1915 and 1915(e)(2)(B)for failure to state a claim upon which relief may be granted.

        **SO RECOMMENDED** on this 27th day of June, 2022.

<br>

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

<br>

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

        A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

<br>

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE